**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Reel Precision, Inc., an Arizona corporation; Alfred and Sheree Levett, a married couple filing jointly;<br><br>Plaintiffs,<br><br>v.<br><br>FedEx Ground Package Systems, Inc., a Delaware corporation doing business in Arizona; FedEx Corporation, a Delaware corporation doing business in Arizona; Eric Pagano and Jane Doe Pagano, a married couple; Amy Gosselink and Stacy Meendering, a married couple; John and Jane Does I-X; Black Corporations I-X; White Partnerships I-X; Red Limited Liability Companies I-X,<br><br>Defendants. | No. CV-15-02660-PHX-NVW<br><br>**ORDER** |

Before the Court is Defendants' Partial Motion to Dismiss or for More Definite Statement (Doc. 25). On March 11, 2016, Defendants moved to dismiss Counts IV and V of the Second Amended Complaint for failure to state claims upon which relief can be granted. On April 11, 2016, the Court ordered that if Plaintiffs contended any further amendment of the Second Amended Complaint could cure any alleged deficiency, Plaintiffs must submit a proposed further amended complaint containing all further allegations Plaintiffs could make. The Court further ordered that no leave would be granted to amend the Second Amended Complaint beyond what was offered in the

proposed further amended complaint. On April 22, 2016, Plaintiffs lodged a proposed Third Amended Complaint. Defendants' motion will be considered a motion to dismiss Counts IV and V of the proposed Third Amended Complaint.

## I. LEGAL STANDARD

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact are assumed to be true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). To avoid dismissal, a complaint need contain only "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The principle that a court accepts as true all of the allegations in a complaint does not apply to legal conclusions or conclusory factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## II. FACTUAL ALLEGATIONS ASSUMED TO BE TRUE FOR DECIDING THE MOTION TO DISMISS

Plaintiffs Alfred and Sheree Levett are a married couple and the managing shareholders of Plaintiff Reel Precision, Inc. Defendants are FedEx Corporation, its wholly owned subsidiary FedEx Ground Package System, Inc., and two of its managers and their spouses. Reel Precision was formed for the purpose of contracting with FedEx to provide pick-up and delivery services in specific primary service areas or routes. Plaintiffs owned and operated the vehicles and other equipment used to perform package pick-ups and deliveries. They also hired other drivers to assist with the pick-up and delivery services. Plaintiffs performed services for FedEx pursuant to an operating agreement.

In 2012 FedEx managers formed a Contractor Safety Committee. During a meeting of the Contractor Safety Committee in November or December 2013, which Plaintiff Sheree Levett attended, Defendant Eric Pagano introduced a concept he referred to as the "walk of shame." Pagano explained that any driver or person related to the

driver who was involved in a vehicle accident should be required to personally change the electronic signage displaying the number of days since the last accident. The signage was located so that any person who would be required to take the "walk of shame" would be observed by others.

On April 25, 2014, a driver hired by Plaintiffs was involved in a vehicle collision. On April 29, 2014, Sheree and Plaintiffs' driver met with Defendant Amy Gosselink to discuss the collision. Alfred was not present at the FedEx facility at the time. After the meeting, Gosselink told Sheree she was required to take the "walk of shame" by personally changing the electronic signage displaying the number of days since the last accident. When Sheree resisted, Gosselink coerced Sheree to comply and escorted her to the signage area. Sheree was extremely embarrassed and humiliated by being forced to change the signage in view of other personnel and drivers. Upon completing the "walk of shame," Sheree drove her vehicle to a secluded area and burst into tears. She was unable to concentrate or focus on her work. Subsequently, Sheree has experienced depression, anxiety, loss of concentration, and trembling.

Within a few days of taking the "walk of shame," Sheree spoke with FedEx's Contractor Relations Specialist, Vicki Perry. Perry told Sheree that she thought the "walk of shame" was disgusting and that she had lost sleep several nights after hearing that Sheree had been forced to take the "walk of shame." In May 2014, Alfred told Perry his concerns regarding Sheree being forced to take the "walk of shame" and regarding FedEx management forcing Plaintiffs to make delivery attempts beyond the requirements of their operating agreement without additional compensation. Alfred told Perry he believed compelling Sheree to take the "walk of shame" may have constituted illegal harassment and requiring delivery attempts beyond the requirements of their operating agreement without additional compensation illegally violated the terms of the operating agreement and applicable wage laws. Plaintiffs believe that Perry immediately conveyed Alfred's complaints to Pagano and Gosselink.

Another contractor for FedEx told Alfred that Gosselink subjecting Sheree to the "walk of shame" was "out of order." One of Plaintiffs' drivers said he wished he was present when it occurred because he would have stopped it from happening. Plaintiffs' driver who was involved in the collision said that Gosselink was a "bitch" because she made Sheree take the "walk of shame."

FedEx's policies prohibit harassment and retaliation against a person who reports in good faith any known or suspected misconduct. Plaintiffs are aware of other drivers who have been in vehicle collisions but neither the driver nor anyone related to the driver was similarly required to take the "walk of shame."

On July 10, 2014, Pagano notified Plaintiffs that he was recommending to FedEx that their contracts not be renewed. On July 14, 2014, Alfred requested a written explanation, which Pagano refused. Pagano's oral comments referred to Alfred complaining to Perry. On August 5, 2014, Alfred received notice of non-renewal effective October 9, 2014. No explanation for non-renewal was given.

## III.   ANALYSIS

### A.   Count V:  Intentional Infliction of Emotional Distress

Although the proposed Third Amended Complaint alleges that "Plaintiffs"—plural—suffered severe and debilitating emotional distress, Plaintiffs' response to the motion to dismiss states that "Ms. Levett has sufficiently pled all of the required IIED elements." (Doc. 31 at 6.) The response repeatedly refers to Ms. Levett's claim, but does not refer to any other Plaintiff having a claim for intentional infliction of emotional distress. Therefore, Count V is deemed to be pled only by Sheree Levett.

Under Arizona law, a claim for intentional infliction of emotional distress requires factual allegations showing that (1) Defendants engaged in "extreme" and "outrageous" conduct, (2) Defendants either intended to cause emotional distress or recklessly disregarded the near certainty that such distress would result from Defendants' conduct, and (3) Plaintiffs suffered "severe emotional distress" as a result of Defendants' conduct. *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1058 (9th Cir. 2007); *Ford v. Revlon,*

*Inc.*, 153 Ariz. 38, 43, 734 P.2d 580, 585 (1987); *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 183 Ariz. 550, 553–54, 905 P.2d 559, 562–63 (Ct. App. 1995). "[C]onduct necessary to sustain an intentional infliction claim falls at the very extreme edge of the spectrum of possible conduct." *Watts v. Golden Age Nursing Home*, 127 Ariz. 255, 257, 619 P.2d 1032, 1035 (1980). It "must completely violate human dignity. The conduct must strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung." *Pankratz v. Willis*, 155 Ariz. 8, 15, 744 P.2d 1182, 1189 (Ct. App. 1987).

> As explained in Restatement (Second) of Torts § 46 cmt. d:
>
> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
>
> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt.

The trial court must make a preliminary determination whether the conduct may be considered sufficiently "extreme" and "outrageous" to permit recovery. *Nelson v. Phoenix Resort Corp.*, 181 Ariz. 188, 199, 888 P.2d 1375, 1386 (Ct. App. 1994). That issue may only go to the jury where "reasonable minds may differ." *Id.* Even unjustifiable conduct by a defendant does not necessarily rise to the level of "atrocious" and "beyond all possible bounds of decency" to be considered "outrageous" by an average member of the community. *Id.* Case-by-case analysis is required to determine whether a defendant's conduct is "outrageous." *Lucchesi v. Frederic N. Stimmell, M.D., Ltd.*, 149 Ariz. 76, 79, 716 P.2d 1013, 1016 (1986).

1    Plaintiffs allege that the "walk of shame" is "atrocious" and "utterly intolerable"
2 because four people made comments indicating that they were offended by it, Defendants
3 intended to embarrass and humiliate Sheree, and the "walk of shame" violates company
4 policies and Arizona laws prohibiting hazing and harassment.  But the standard is not
5 whether any individuals have actually exclaimed, "Outrageous!"  The standard is an
6 objective one:  would an average person in this community consider the conduct to be so
7 outrageous and so extreme as to go "beyond all possible bounds of decency" and to be
8 "utterly intolerable"?  Is the conduct more than mere insult and indignity?

9    Published decisions applying Arizona law show that an average member of the
10 community would not find Defendants' conduct to be extreme and outrageous. *See Craig*
11 *v. M & O Agencies, Inc.*, 496 F.3d 1047, 1059 (9th Cir. 2007) (supervisor repeatedly
12 propositioning employee, following employee into bathroom, and sticking his tongue in
13 her mouth could be extreme and outrageous conduct); *Mintz v. Bell Atl. Sys. Leasing*
14 *Int'l, Inc.*, 183 Ariz. 550, 553–54, 905 P.2d 559, 562–63 (Ct. App. 1995) (firing an
15 employee by letter delivered to hospital bed where the employee was being treated for
16 severe emotional problems was not extreme and outrageous); *Nelson v. Phoenix Resort*
17 *Corp.*, 181 Ariz. 188, 199-200, 888 P.2d 1375, 1386 (Ct. App. 1994) (escorting employee
18 out of premises in middle of night by armed security team, allowing employee to use
19 bathroom on way out only if accompanied into stall by armed escorts, and firing
20 employee in lobby in front of coworkers and media was not extreme and outrageous);
21 *Pankratz v. Willis*, 155 Ariz. 8, 15, 744 P.2d 1182, 1189 (Ct. App. 1987) (stealing child
22 from parent was extreme and outrageous); *Ford v. Revlon, Inc.*, 153 Ariz. 38, 43, 734
23 P.2d 580, 585 (1987) (corporation's delay of more than a year in investigating an
24 employee's claims of sexual assault and continuing threats and harassment by her
25 supervisor, which led to the employee's attempted suicide, was extreme and outrageous);
26 *Midas Muffler Shop v. Ellison*, 133 Ariz. 194, 198, 650 P.2d 496, 500 (Ct. App. 1982)
27 (six phone calls over a three-month period by collection agency after payment was made
28 was not extreme and outrageous); *Watts v. Golden Age Nursing Home*, 127 Ariz. 255,

257, 619 P.2d 1032, 1035 (1980) (nursing home's two-day delay in informing wife that her husband was diagnosed with terminal pneumonia, which caused his death four days after diagnosis, was not extreme and outrageous).

The Court finds that Defendants' alleged conduct does not raise an issue "where reasonable minds may differ." Requiring Sheree to personally change the electronic signage displaying the number of days since the last accident in the presence of other people may be a form of safety and personnel management few people would agree with. But the law does not mandate good management or outlaw fear management. Moreover, Sheree was personally present when it was introduced six months before in the Contractor Safety Committee meeting, so she knew of the plan. The complaint does not allege she raised any objection. This conduct falls well short of the level of "atrocious" and "beyond all possible bounds of decency" required for a claim of intentional infliction of emotional distress under Arizona law.

Therefore, Count V will be dismissed.

**B.     Count IV: Whistleblower Retaliation in Violation of A.R.S. § 23-1501 (Wrongful Termination)**

The Third Amended Complaint alleges that A.R.S. § 23-1501(A)(3)(c)(ii) prohibits an employer from discharging an employee[1] for whistleblowing activities. Section 23-1501 provides in part:

A.     It is the public policy of this state that:

1.     The employment relationship is contractual in nature.

2.     The employment relationship is severable at the pleasure of either the employee or the employer unless both the employee and the employer have signed a written contract to the contrary setting forth that the employment relationship shall remain in effect for a specified duration of time or otherwise expressly restricting the right of either party to terminate the employment relationship. Both the employee and the

---

[1] Defendants state that the present motion does not require a determination of whether Plaintiffs were independent contractors or employees, but they contend that Plaintiffs were not employees, and they reserve the right to challenge Plaintiffs' employment status in subsequent proceedings in this matter.

employer must sign this written contract, or this written contract must be set forth in the employment handbook or manual or any similar document distributed to the employee, if that document expresses the intent that it is a contract of employment, or this written contract must be set forth in a writing deemed sufficient to eliminate the requirements set forth in this paragraph.  Nothing in this paragraph shall be construed to affect the rights of public employees under the Constitution of Arizona and state and local laws of this state or the rights of employees and employers as defined by a collective bargaining agreement.

      3.     An employee has a claim against an employer for termination of employment only if one or more of the following circumstances have occurred:

      (a)     The employer has terminated the employment relationship of an employee in breach of an employment contract, as set forth in paragraph 2 of this subsection, in which case the remedies for the breach are limited to the remedies for a breach of contract.

      (b)     The employer has terminated the employment relationship in violation of a statute of this state.  If the statute provides a remedy to an employee for a violation of the statute, the remedies provided to an employee for the violation of the statute are the exclusive remedies for a violation of the statute or the public policy set forth in or arising out of the statute, including the following:

. . .

      (iii)     The statutes governing the hours of employment prescribed in chapter 2 of this title.  [A.R.S. §§ 23-201 *et seq.*]

. . .

. . . If the statute does not provide a remedy to an employee of the violation of the statute, the employee shall have the right to bring a tort claim for wrongful termination in violation of the public policy set forth in the statute.

      (c)     The employer has terminated the employment relationship of an employee in retaliation for any of the following:

      (i) The refusal by the employee to commit an act or omission that would violate the Constitution of Arizona or the statutes of this state.

      (ii) The disclosure by the employee in a reasonable manner that the employee has information or a reasonable belief that the employer, or an employee of the employer, has violated, is violating or will

- 8 -

>violate the Constitution of Arizona or the statutes of this state to either the employer or a representative of the employer who the employee reasonably believes is in a managerial or supervisory position and has the authority to investigate the information provided by the employee and to take action to prevent further violations of the Constitution of Arizona or statutes of this state or an employee of a public body or political subdivision of this state or any agency of a public body or political subdivision.
>
>. . .
>
>B.    If the statute provides a remedy to an employee for a violation of the statute, the remedies provided to an employee for a violation of the statute are the exclusive remedies for the violation of the statute or the public policy prescribed in or arising out of the statute.

Plaintiffs do not allege they were terminated "in breach of an employment contract." A.R.S. § 23-1501(A)(3)(a). Nor do they allege they were terminated "in violation of a statute of this state." A.R.S. § 23-1501(A)(3)(b). Plaintiffs attempt to plead a claim under A.R.S. § 23-1501(A)(3)(c)(ii) for termination in retaliation for disclosing to FedEx that it "has violated, is violating, or will violate . . . the statutes of this state." Violations of three statutes are alleged to be complained about. The first is A.R.S. § 23-350 *et seq.* by failing "to pay an employee wages for all time worked." (Doc. 35-1 at 18.) The second is § 44-121 ("Every contract in writing imports a consideration."). The third is A.R.S. § 12-1809(S) by harassing Sheree by forcing her to take the "walk of shame."

Plaintiffs do not state a claim for retaliation under any of these bases, as Plaintiffs could not have had a "reasonable belief" that FedEx was violating "the statutes of this state" in light of the plain meaning of those statutes.

1.    Despite four versions of their complaint and warning after the third that only one more would be considered, Plaintiffs do not specify which of the numerous sections of "A.R.S. § 23-350 *et seq.*" they claim under. Whichever unnamed section it is, the remedy for failure to pay wages is "treble the amount of the unpaid wages." A.R.S. § 23-355(A). Alternatively, within one year an employee may file a claim "for unpaid wages" with the Arizona Department of Labor if the amount does not exceed $5,000.

- 9 -

A.R.S. § 23-356(A). Those express statutory remedies are exclusive. A.R.S. § 23-1501(B).

Plaintiffs complained that FedEx wrongfully added tasks beyond what the Operating Agreement required and, because they really are employees, they are entitled to extra wages for performing extra tasks. If this is a valid wage claim, not just a breach of contract claim, the termination might look like a retaliation under A.R.S. § 23-1501(A)(3)(c)(ii) for complaining if that clause were read without consideration of the rest of the statute. But the clause is subject to subsection B, which limits the entire section to remedies provided in the underlying statute if a remedy is provided. Under general contract law, a party may breach and pay and still be free to terminate a contract terminable at will. By ignoring subsection B, Plaintiffs would turn this clause into a general entitlement to employment tenure any time an employer is said to have breached and the employee makes a claim to a higher-up. The legislature could say that, but it is unlikely to have said that in the same statute in which it said exactly the opposite.

2. Plaintiffs get no help from A.R.S. § 44-121, which states: "Every contract in writing imports a consideration." A preeminent American dictionary at the time defined the verb "import" as "[t]o bear or convey in meaning or implication; signify; mean; denote; betoken." 4 *The Century Dictionary and Cyclopedia* 3013 (1897). The statute has nothing to do with making it a violation of statute to fail to render agreed consideration. Nor does it mean that a valid contract with consideration is actionable by statute. It means that the writing itself constitutes or substitutes for consideration, eliminating the need to plead or prove consideration to enforce the contract. That had long been an historical effect of a sealing.

> Want of consideration is not a sufficient answer to an action on a sealed instrument. The seal imports a consideration, or renders proof of consideration unnecessary; because the instrument binds the parties by force of the natural presumption that an instrument executed with so much deliberation and solemnity is founded upon some sufficient cause.

*Storm v. United States,* 94 U.S. 76, 84 (1876) (citations omitted).

- 10 -

This statute was enacted in 1901 to abolish the need for a private seal for the validity of any instrument. It restated in the affirmative that contracts in writing have the same effect on consideration doctrine as sealed instruments.

> 4054 (Sec. 1.)  *No private seal or scroll shall be necessary to the validity of any contract,* bond or conveyance, whether respecting real or personal property, *or any other instrument in writing*, whether official judicial or private, except such as are made by corporations, nor shall the addition or omission of a seal or scroll in any way affect the force and effect of any of the instruments mentioned 4054. (Sec. 1.)   No   private seal or scroll shall be necessary to the herein, which have been heretofore or which may be made.
> 4055 (Sec. 2.)  Every contract, in writing, hereafter made shall be held to import a consideration *in the same manner and as fully as sealed instruments have heretofore done.*

Rev. Stat. of 1901, §§ 4054, 4055 (emphasis added).   The text explicitly gave contracts in writing the same presumption of consideration as sealed instruments.

The Revised Statutes of 1913 merged these two sections into one without textual change. Rev. Stat. of 1913, § 5564. The Struckmeyer Code deleted some words and phrases from the first sentence and deleted from the last sentence the words "in the same manner and as fully as sealed instruments have heretofore done." Rev. Code of 1928, § 3048. No doubt this was pursuant to the Code Commissioner's charge to "reduce in language" but not "make any change of existing laws." 1925 Ariz. Sess. Laws, ch. 35 § 3. The Arizona Code Annotated of 1939 made no change. A.C.A. of 1939 § 1-111. The Arizona Revised Statutes of 1956 similarly made no change but separated the two sentences into different sections, § 1-202 eliminating the need to seal any instrument in writing and § 44-121 for "Every contract in writing imports a consideration." The latter section has always had the same meaning: to put unsealed contracts in writing on the same footing for purposes of consideration as sealed contracts previously had. It said that expressly for the first 28 years, and it has continued to mean that since the surplusage was trimmed in 1928.

The only significant Arizona case confirms this. It holds a party suing on a contract in writing need not plead consideration and a party denying consideration must plead it specially, not by general denial:

> It is the ordinary rule of pleading that, where a suit is based upon an instrument which as a matter of law imports a consideration, it is not necessary that a consideration be pleaded, nor can a want or failure thereof be offered in defense under a general denial.
>
> The note and assignment on which plaintiff relies, under the law of Arizona, import a consideration. Section 3048, Rev. Code 1928. It was not necessary for plaintiff to plead or prove a consideration . . . . [T]he general denial of intervener . . . was entirely insufficient to raise the issue of want of consideration.

*Sapp v. Lifrand,* 44 Ariz. 321, 324-25, 36 P.2d 794, 796 (1934) (citations omitted).

No claim of retaliatory termination can be grounded on A.R.S. § 44-121. The slightest inquiry into this statute would have shown that.

3.   Arizona statutes provide an accelerated peace-keeping process for an "injunction against harassment." A.R.S. § 12-1809. It can be filed before any municipal magistrate, justice of the peace, or superior court judge anywhere in the state, regardless of the respondent's location. No security is required. Injunctions without notice are not prohibited, though a petitioner must show what efforts were made to give notice or why notice should not be given. In practice notice is rarely given. The addressee of the injunction can demand a hearing to lift the injunction, which must be held at the earliest possible time and within ten days.

The statute defines "harassment" as "a series of acts over any period of time that is directed at a specific person and that would cause a reasonable person to be seriously alarmed, annoyed or harassed and the conduct in fact seriously alarms, annoys or harasses the person and serves no legitimate purpose." A.R.S. § 12-1809(S). The only remedy under the statute is the injunction, but the same conduct may be actionable on other grounds.

Plaintiffs allege Sheree's subjection to the "walk of shame" was "harassment" under A.R.S. § 12-1809(S) and that complaining to higher-ups about it triggered a right

against retaliatory termination under A.R.S. § 23-1501(A)(3)(c)(ii).  Thus, voicing disagreement about a personnel policy gives the very tenure in employment that A.R.S. § 23-1501(A)(2) repudiates.  Plaintiffs' discussion of this is devoid of analysis, consisting of four lines in the Third Amended Complaint, five lines in their Response, and nothing in their Supplemental Response.  This retaliation claim fails as a matter of law on at least the following grounds:

--Bare conclusory allegations do not state a claim.

--The "walk of shame" is not "harassment" under the plain language of § 12-1809(S).  There was only one "walk of shame," not a series.  It "serves a legitimate purpose"—employee safety incentive within the discretion of employers, whether or not wise, unless the act is specifically prohibited.  The statute is not a mandate for courts to add new, unenumerated terms of labor regulation, already one of the most highly regulated activities in our society.

--The definition of "harassment" as "acts . . . that . . . seriously . . . harassed" . . . "a reasonable person" is circular.  "Reasonable" includes everything that is not irrational and everything for which the opposing views are also reasonable.  That raises serious questions of compliance with due process of law in statutory drafting.  The word "harassment" alone is so overused and diluted that it has no reliable import for basing severe legal consequences on it.  The statute should be construed narrowly in hopes of saving its constitutionality.

By no means would the "walk of shame" suffice under § 12-1809(S) to enter an injunction against harassment.  The Plaintiffs could not reasonably believe it would.

Count IV fails to state any claim for retaliatory termination under A.R.S. § 23-1501(A)(3)(c)(ii).  The motion to dismiss that claim will be granted.

**C.  No Leave to Amend Is Sought or Justified**

Although leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), five factors should considered:  bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously

amended the complaint. *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). "Futility alone can justify the denial of a motion to amend." *Id.* Leave to amend should be granted if the complaint's deficiencies can be cured with additional factual allegations that are consistent with and do not contradict allegations in the challenged pleading. *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). Dismissal without leave to amend is proper if the complaint cannot be cured by any amendment. *Id.* Courts have "especially broad" discretion to deny leave to amend where the plaintiff already has had one or more opportunities to amend a complaint. *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989); *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989). In this case, Plaintiffs were expressly warned after the Second Amended Complaint that the Third would be the last opportunity to amend. They have had ample opportunity to amend, they have not sought leave to file a fifth complaint, and they have not suggested anything more they could plead to cure the deficiencies.

Counts IV and V will be dismissed with prejudice.

IT IS THEREFORE ORDERED granting Plaintiffs leave to file their proposed Third Amended Complaint ("redline" version lodged as Doc. 35-1).

IT IS FURTHER ORDERED that Defendants' Partial Motion to Dismiss or for More Definite Statement (Doc. 25) is granted and Count V (Intentional Infliction of Emotional Distress) and Count IV (Statutory Retaliatory Termination) of the Third Amended Complaint are dismissed with prejudice.

Dated: August 8, 2016.

_____
Neil V. Wake
Senior United States District Judge